Now turning to the regular calendar, I call the first case, which is United States v. McLaurin. Thank you. Good morning. Good morning, Your Honors. May it please the Court. Isaiah McLaurin comes before this Court to vacate his conviction for witness tampering, which was found in violation of 18 U.S.C. 1512b3 on the grounds that his plea was not voluntarily or knowingly given. Now to understand the case, we just need a little bit of background. The case actually concerns Facebook postings. Was there a plea agreement in this case? I'm sorry. I didn't understand the question. I apologize. Was there a plea agreement? Yes, there was a plea agreement in this case, absolutely. And it was assigned in court after, without the court asking the defendant whether or not he had read the plea agreement. He did ask whether he had reviewed it, but it was signed after. He now wants to vacate his plea. Is that correct? Yes, he wants to vacate the plea because he claims, and I believe that the record supports his claim, that his plea was not voluntarily or knowingly given. Oh, no. I just want to make it clear that you're not going to claim the plea agreement is still in effect. I mean, he understands the risks of going to trial. That is correct, Your Honor. I understand what the court is suggesting. I understand if his plea is vacated and then he goes to trial on this case, the argument could be made that he would face additional time. I understand that. In fact, I don't actually believe that that would be the case because, in fact, both the agreement and... Well, it doesn't matter. I wasn't suggesting that it was the case.  Okay. Thank you, Your Honor. But in any event, what we're saying, because I understand it, is that there was a complaint in another case having to do with a drug ring in Elmira. That was posted in a newspaper article on that case was in the local newspaper on the as well as the DEA affidavit in support of that complaint that mentioned that there was a CS1 and a CS2. Not by name, right? Not by name, although it was certainly revealed in court during the bail hearing by the prosecutor. In any event, it was certainly suggested, I guess if you know the group, who it would be. My client, therefore, that night, in a drunken stupor, having taken his bipolar medication and alcohol, went on the Internet, found the local article, the complaint, the affidavit, and on the public Facebook, posted Facebooks with respect to the CS1 and CS2. There were communications with others as to who these may be. And he, with respect to Individual A, and I'm only going to speak about the posting as Individual A, because the information to which he pled only alleged and the allegation as to Victim A. So as to that, as to Victim A, he, on the public Facebook posting, he writes, Shit's crazy, that faggot, expletive, ass nigger, and then the name of the Individual A. Is that CI1 or 2, suggesting he's not clear which of the two mentioned by the DEA and in the communications with others. And then he goes on to say, fax somebody better, have this nigger in protective custody, because if he thinks he can just pick his daughter up from school and everything's going to be okay, he got it coming. That sounds like a threat to me, doesn't it to you? It is, well, a threat as to what? And that's the issue when we look at the two elements in the statute 18 USC 1512B3. And that we need, it's a specific intent crime, and we need knowing conduct, and we need knowingly intention to interfere. Now when the, Mr. McLaren was asked at the plea hearing, what did you understand, what were you doing? And remember, and this is important, he's asked this by the district court judge prior to the district court judge reading the information. So all the district court judge has now gone through is what basically I've gone through with this court. And he says to McLaren, what did you do? And McLaren explains, under oath, well, and he said, I made these threats. So to him, the- I went through the indictment that was posted online and found out who the confidential informants were. And I posted on my favorite status their names, and I threatened them. That is correct, but number one, we have to remember them would be not as to the information. He's only charged with victim A, which is clear indication he didn't know what he was pleading to. That he was only, hadn't read the plea agreement carefully, hadn't been really apprised of the information, which only charged victim A. So that's one indication he did not understand. But he goes on to say, when asked more, and he said, yes, these were threats. And why, and you did that, why? I'm sorry, 888. I honestly, I was just highly intoxicated. The court. Did you do it to affect whether or not you were going to testify in proceeding subsequently? Not to testify, just I never said, if you come to court, testify. And then again, on A89, when the court presses him further, what did you do? And he says, well, yes, I made threats, but what is the threat? The threat simply is that you're a CS. He's outing him. That is not against the statute. And the threat is really not prospective, it's the back. He is notifying, you're a- Excuse me, the court also asked, and did you make these threats with the intent to influence, delay, or prevent that individual from testifying in the prosecution of those same individuals? Defendant says, yes, sir. Yes, and that's on page A90, I believe. It's subsequent to the colloquy I was just, so yes, if the pressed further. But when the court looks at whether the plea is voluntary and knowing, one has to look at the totality of the plea proceedings. And if we look at this, when he's asked, basically himself, what did you do in your own words? Not in the words of somebody else, not in the words that somebody's written for you in a stipulation. What is your words? And he says specifically, I just was because they were CS's. And the fact that you are saying a fact, the fact that there's a CS and as a CS, well, it's well known that you could be in jeopardy. And so, based on the actual words themselves, they are not a violation of 1512B3. And that's further supported by the defendant under, spontaneous response to the court, what did you mean by this? What were you doing? I was just basically saying, I'm outing them. And because they're a CS, they do, as we know, face danger. But remember, it's the DEA that's on the Internet first. And the other Facebook postings that aren't part of the record, in which Mr. McLaren is communicating about who's the CS1 and CS2. And clearly, he doesn't know that. Excuse me, the problem, counsel, is that when asked again, you then threatened them, based upon the fact that there were confidential informants in this drug investigation, the defendant said, yes, sir. And the court says, correct. And he says, yes, sir, again. And that was all done with the intent to prevent them from continuing with their cooperation. And the defendant, again, says, yes, sir. And you knew that. And he says, yes, sir, again. So he said, yes, sir, four times in response to the court's questioning. That's correct. However, prior to that, where he's explicitly saying, the only thing I'm doing is outing them, basically, which is not contrary to 1512. And remember, the threat has to be at least a threat to somebody. And this is a public. We have absolutely no evidence that, in fact, victim A read it. So it's not a threat to him directly. And it's just out there. Now, I am not saying that there may not be, somebody may pick it up. And I think that this is what the magistrate was concerned, as well as the judge, is clear from his sentencing comments. But that's not what the statute says. And so the statute, very clearly, is one that says that it has to be a threat, at least to somebody. Somebody has to understand that they're a threat. And that's not clear from here. And we know from what the defendant is saying under oath, spontaneous, what did you do? I'm just outing them. And nothing about what he says is something that he's saying, if you read it, about testifying. It's because you're a CS that you're in danger, not because you shouldn't do something else. Your time has expired. Thank you. You deserve some time for rebuttal. We'll hear from the government. Thank you. May it please the court, Monica Richards on behalf of the United States of America, good morning. Well, as the court indicated, this was a threat. This was a threat to, whether we call it a threat to out, whether we call it it's witness intimidation. It's worse than witness intimidation, if I'm hearing counsel right, she's actually implying it's retaliation, which is a different statute, 1513. And that actually carries a 30 year maximum, as opposed to the 20. So we've read intensively from the plea colloquy. Now I want to read you something from the sentencing. We know this is an intent crime. And the district court said, even though, and this is from A127. Even though it sounds, I guess, in one way, innocuous to use a computer, it's actually not innocuous at all. Probably it's more dangerous now, because as soon as you send that to hundreds, if not thousands of people see it and can act upon it, even, and this is what I want to underline, even if it wasn't your intent, so the judge expresses his own doubt as to whether McLaurin had the intent to commit the very crime with which he's charged. Respond to that. Yes, respectfully, your honor, I disagree. That's with regard to whether or not other people would act on it. He says, even if it wasn't your intent. Right, but it's in the beginning. But the beginning of that sentence, that's like a, I hate this, independent, no, it's a dependent clause, it's a dependent clause, probably it's more dangerous now, because as soon as you send it out, hundreds, if not thousands of people see it. So he's talking about other people and what they, what he may or may not have intended with regard to other people. I see, so he's not talking about, you think, his intent to commit the crime, but intent is what this crime is all about. I agree, I agree, but the intent to threaten, the intent to out, that's already, that's in there, that's implicit. That he is personally acting, he is personally threatening. He's encouraging, he's threatening the family members of this person by saying, better not pick up your daughter at school. I mean, there's things in here that are threats by this gentleman in particular. And the intent to threaten, as the court outlined during the course of the plea colloquy was established. It might have, in the middle, gone a little funny, but the beginning and the end, the threat. You will concede that he seems a little confused during the plea colloquy, do you not? The only thing I could say that was confused about, Your Honor, is specifically with regard to the intent to, I'm sorry, so now we're getting those words in there again, but specifically regarding testimony. I think that the rest of it, as Your Honor pointed out, is, and part of the elements of the statute are well included. That on page 90, for example, of the record, that this was intent, I'm sorry, this was done with the intent to prevent them from continuing with their cooperation, that's a statutory element. Yes, sir, and you knew that, yes, sir. So, I think that there might have been some hesitation or thought on his part was with regard to testimony and the inducement or the suppression or the intent to influence the person with regard to actually testifying in court. But with regard to cooperation, it's clearly stated on the record, and he does not hesitate on page A90, for example, when he's asked that question. So that's sufficient for a violation of this. You think the colloquy demonstrates that Mr. McLaurin knew he was committing this intent crime of threatening someone to keep them from testifying? I do, I do. I don't think it's entirely clear that it shows that. I think he was confused and also had suffered from some other disabilities. I would say that A89 is the best example of your Honor's concern. That the court even stepped back after he said, and did you make these threats, I'm about line five on page A89. And did you make these threats with the intent to influence, delay, or prevent that individual from testifying in the prosecution of those same individuals? He says, yes, sir, but then we get some color to the record, and the court says, well, you look a little puzzled. And so the court has your Honor's, I mean, we can get a little color, it's hard in the black and white here. But, and he tries to say, I didn't mean to keep them from testifying in court. And again, that's where my indication is, he's caught up on this testimony aspect of the intent to influence and to encourage by threatening non-cooperation. This is Judge Winters. Do I understand your position to be that informing the government of facts that cause somebody that would show a defendant's guilt violates this statute? Even if the person would not testify against them? I'm sorry. Cooperation alone violates the statute. Well, the, right, the language of the statute itself, the elements are included in the record in the plea agreement. At page A71, we have the elements. And there is a string of actionable elements there. There is a string of things, intent to influence, delay, or prevent testimony. But then there's an or, cause to induce any person to withhold testimony. Well, there's the testimony again. Or, hinder, delay, or prevent the communication of information relating to commission or possible commission of a federal offense. So they're all in there. We plead in the disjunctive. But it's the last element that he pled to in your view. Reading his concern regarding testimony out of it? Yes, there's still sufficient basis for that plea. Even if we were to say he didn't mean to. No, no, please answer my question. I'm sorry, then I don't know what the question is. My apologies. You read three elements. The first two, as I understand it, have to do with testimony. The last one just has to do with communicating evidence that would be helpful to the government. Then I ask you, is it the last element that he pled to in your view? No, I think upon clarification, he pled to the entirety of it. But, yes, most definitely with regard to the last element. Most clearly, without hesitation, with regard to the last element. That's page A90. How did he plead to the testimony elements? How is it clear? It's not clear to me that he pled guilty to the testimony elements. Well, if that's a concern for the court, then it's beside the point in terms of what, given the testimony with regard to the final piece in terms of the cooperation. But I'm at page 89, they do talk specifically about testifying, talking about I didn't mean to show up in court to testify is what he says. And then the judge, like I said, says let's take a step back. You determine they were cooperating. Right. You threaten them based on the fact that they were confidential informants. Yes, sir. But, well, you're saying his initial statement about testimony was sufficient as to the testimony elements of the crime. His response is yes, sir, and he doesn't back off from that. Even though the court says, well, you look puzzled, we continue. And we get a series, as Judge Pooler noted already, that we had a series of yes sirs after that, that were four of them, let alone the fact that the judge further reviewed the indictment with him, which included that. He repeatedly muddies the water by saying I did not say that I will go after you if you testify. Okay. And that seems to me to muddy the water as to the testimony elements. But then we take a minute and we walk back through things, and even then, at page A95 in the record, he reads from the information, which includes that same language, to withhold testimony. It's the bottom of page A95. And he asks them how do you plead, and he says guilty. There's no hesitation. But I didn't mean to prevent him from testifying thrown in there. He pleads guilty. And he says, and there's further findings that indicate that by the court, that the court satisfied that it was a knowingly and intelligently entered plea, and in fact, again, reviews the entirety of the plea starting at page A97, which again includes on page A99 that he made the threats with intent to influence, delay, and prevent the individual from testifying in the prosecution. And there's no objections. There's nobody standing up. There's nothing from the defendant indicating otherwise. But the defendant twice substantively denied intent and explained his denial to the district court. That's at 88 to 90. And at the very least, you have to admit that this is confusing and perhaps inconclusive. He said if it's not clear, you don't take the plea. We have told this to district courts. Right, but there was no objection here, Your Honors. We're mindful of the fact here that what we have is somebody, this is plain air review for this court's purposes. There's been no objection below. All this time throughout this proceeding, there were opportunities for the defendant to have made it more clear, less muddy, so to speak. He did it twice, and then one could argue he was overborne by the district judge acting sort of like a prosecutor and this and this and this and requiring him to answer each one of them. The district court seems less like he was engaged in a search for truth and more like he was intent on getting Mr. McLaurin to agree to what the terms of the plea was. Your Honor, I'm sorry. My time is out. If I can answer the question, it's an important question. But that is not the view of the record that I have. He asked him from the outside, what did you do? That's not a cross-examination type question. That's wide open. What did you do? He said, I threatened them. I figured out who they were, and I threatened them. He read also then throughout, had the opportunity. Do you understand? The questions were designed to make sure that he understood. The section I read was very intent. Did you threaten them? Did you threaten to do harm? Yes, sir. Based upon their role as confidential informants? Yes, sir. And you believed they were cooperating? Yes, sir. You could have said no, sir. There's nothing there. That's wide open, Your Honor. Respectfully, that's wide open. And then he said, well, you do look a little puzzled. Well, you look a little puzzled. And then he says, well, I guess I never meant to say, like, if you come to court and testify, if you like or if you like or if you show up to court and you testify, I would do, you know what I mean. I was just saying, like, your snitches and stuff. Right. He says he didn't intend to threaten them. But that is what he did, though, Your Honor indicated. You say something like he said on those posts that is a threat. So with respect, if I could, Your Honor, I will also say that here again under the plain error standard, if I could, that this was a decision that was made based on the pendency, the potential for charges with regard to others. This was only an information, and there were other charges, including retaliation, which could have been brought, which would have exposed him to a 30-year maximum. So there was a real decision to be made here with regard to this plea. I just wish it wasn't so ambiguous. That's all. I know you don't see any ambiguity, but opposing counsel will now take the podium and explain to us why we shouldn't accept this. If I could, Your Honor, if there's any intention to go beyond what's been discussed with regard to point one in the brief, I'm concerned that something's going to come up on rebuttal with regards to the remainder. If there's any questions that the court has with regard to the remainder of the points raised in the brief. I think this was the main issue that, Judge Winter, did you have any other questions not on the topic of intent? No. Okay. Thank you. Counsel? Thank you very much, Your Honor. Yes, the main issue is the specific intent, which we addressed in many different ways within our brief. But basically, let me be clear. When he says that he threatened his outing, what he's saying he's outing, the threat that he's talking about is that they're C.S.'s. And that is not an offense. So that it is a fact from the DEA. Did he not clearly say that he was threatening them in an effort to prevent them from cooperating? He said that only as a yes, sir. Those were not his words. He said yes, sir. Yes, he does. But he says that, Your Honor, only after. Doesn't that violate the statute? If that was all that we had on the record, that might, I would suggest, however, that the words themselves are not within the ambit because they are talking about because you're a C.S., you should look out. Not because, which is a fact, which is a truth. It does not say because you're a C.S., you should not continue because somebody's going to hurt you. And rather, even if, for example, let's say he didn't continue to cooperate, the fact that he was outed, he might well be harmed anyway by somebody else. We know not by Mr. McLaren and nobody suggested otherwise because, in fact, as soon as he became sober within hours after he made the post, he took it down. And he took down the post before the police contacted him, before he was alerted that there would be any concerns by law enforcement. So the posts were made when he was extremely inebriated, which may be it's a specific intent crime, and that in itself may well be a defense. We don't, I'm not saying that was in other parts, but that goes to the specific intent of this crime. And so what we have here, if you look at the words alone, they sound awful, but are they a threat of future harm because you should not continue? You are all the words, although nasty, which is not a violation of, as we know through other Twitter that's been aired, being nasty is not a violation of 1519B3. But when they're, that's all that this is saying, that you as a CS could face, which is true. So our position is that the confusion is supported by what he said. And he's telling the court not in the court's words, which is the yes sir, yes sir, but in his own words. So that's what I asked the court to consider, that there was this confusion. I also believe that the court was saying in the plea, which the court mentioned, that it was not his specific intent, not only for others to do harm, but for him to do harm. And we know that because that wasn't his intent, because he took it right down. He didn't do anything. He didn't even know this individual. We have no idea if this individual even saw it or if he had a daughter. None of that is part of the record. We have no idea if he made all this up. So that has to be considered. What's in the record is the only thing we have is he's confused his words. Are you saying that in a case like this, where someone is challenging whether their plea allocution provided a factual basis for the plea, are you saying that we as a court cannot rely on answering very specific questions with the words, yes sir, does that adopt those words, that we can't say they are adopting the words? Absolutely not. I think in most plea allocutions that this would be the case, that is a very smooth allocution. This plea hearing was somewhat confusing in that the information was not read to him until he made admissions. It was only after it was read. It wasn't until page 893 that the information was actually read. So his admissions came even before that, which may have added also to his confusions. What we have here, it's true, Your Honor, that solemn declarations in open court carry a strong presumption of verity. And that's from the Supreme Court case of 431 U.S. 6374, 1977, the Blackridge v. Allison. But then we can't weigh, I mean, he's also made alloc statements under oath. So we have his, can't say one is better than the other. The ambiguity. Yes. And as far as plain error, our position is plain error. And that it's very important for this court to correct it, where we have somebody pleading to something that it's not clear he understood. I suggest that it was not within the ambit of the law. And so it's very important for public confidence in the law that we correct this error. Are there any other questions? Thank you, counsel. Thank you both. We'll reserve a decision.